## CIRCUIT COURT OF THE CITY OF RICHMOND

DuPont Glore Forgan, Inc.

v.

Norbert G. Mudd, etc.

May 17, 1974

E.F. No. 79-962

By JUDGE ALEX H. SANDS, JR.

This is an action instituted by plaintiff, hereinafter referred to either as plaintiff or "duPont," to recover of defendant, hereinafter referred to either as defendant or "Mudd," individually and as custodian for Christopher K. Mudd the value of 50 shares of Ingersoll-Rand stock amounting to $2,374.67, together with the accumulated dividends upon such stock from the date of sale and interest upon the aggregate amount of these two items.

At the time of the alleged transaction here in issue, Mudd maintained with duPont a number of accounts with only two of which we are concerned in this proceeding. These two were (a) account # 6086001, which was a custodian account upon Mudd's son, Christopher, and (b) account # 608003, which was an individual account in the name of Norbert G. Mudd. It will be necessary that these two accounts be considered separately for purposes of this proceeding.

It is duPont's contention that on July 14, 1968, Mudd placed a telephone order with duPont to sell 50 shares of Ingersoll-Rand for account # 6086001, such stock not then being held by plaintiff in this account but which was to be delivered to plaintiff by defendant on

the closing date of July 19; that plaintiff, pursuant to such arrangement, did in fact sell 50 shares for account # 6086001 and remitted net check for proceeds to Mudd, but Mudd has never remitted to plaintiff the stock as agreed either by the contract date of July 19, 1968, or at any other time up to the present. (Although the witness John Bolling Lewis testified that it was contrary to the approved practice to issue check until the stock was in hand, yet plaintiff's testimony is that the alleged transaction with defendant was of a kind customarily followed by duPont.)

Defendant, on the contrary, denies that he placed any such telephone order with plaintiff or that the check from plaintiff to him in the amount of $2,374.67 was in payment of 50 shares of Ingersoll-Rand sold at his request. The uncontradicted evidence is that there was never any Ingersoll-Rand stock held by plaintiff for the custodial account (# 6086001).

## Defenses

Defendant has, by way of defense, interposed a plea of the statute of frauds as set forth in Virginia Code Section 8.8-319. Defendant further denies that there ever was any such transaction as claimed by plaintiff, and pleads that statute of limitations.

## Statute of Limitations

It is conceded that the five-year statute of limitations provided by Code § 8-13 is applicable. While the contract of sale was consummated between the parties on July 14, 1968, the defendant was not obligated to produce the stock until July 19 and it was not until such date that the contract was breached by defendant and plaintiff's cause of action, therefore, arose on that date from which time the statute began to run.

The memorandum from plaintiff to the Clerk's Office of the General District Court, which initiated this proceeding, is stamped received by the Clerk's Office on July 19, 1973. The running of the statute was tolled as of this date.

Defendant contends, however, that to escape the operation of the statute, the action would have had to have been instituted on the 18th rather than the 19th of July. There is no merit to this contention and the plea of the statute of limitations is overruled.

### Plea of the Statute of Frauds

Defendant relies on § 8.8-319 of the Code of 1950 as amended. As this section deals with "contracts for the sale of securities," it is first necessary to determine the nature of the claim with which we are dealing. Plaintiff argues that the claim which he is asserting stems from liability incurred by defendant under the contract, the terms of which are set forth on the reverse side of the "signature card" (plaintiff's exhibit number 1).

It is apparent, however, that this is not the situation, both in view of the nature of the transaction itself and of the relief sought. Under the alleged arrangement between plaintiff and defendant, defendant was to deliver to plaintiff 50 shares of the stock of Ingersoll-Rand by the closing date, not a sum of money, and the relief sought is recovery of the value of 50 shares of the stock plus dividends thereon from the date the stock was to be delivered. It is further apparent that § 8.8-319 had as its purpose the avoidance of just such a situation as is under consideration. The official comment under this section is as follows:

> Paragraph (c) is particularly important in the relationship between broker and customer. Normally a great volume of such business is done over the phone.

Paragraph (c) provides that no contract for sale of securities is enforceable unless:

> Within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt.

The plaintiff has not borne the burden of proving that such confirmation was sent. Plaintiff says it was sent but was unable to produce any office record to substantiate this assertion and defendant flatly denies ever having received any such confirmation although standard forms of such confirmations were shown to have been sent in other instances. It could certainly not be seriously contended that either the receipt of the July 19 check by defendant or the monthly statements sent by plaintiff and received by defendant met the requirements of confirmation under § 8.8-319.

But, aside from the failure of plaintiff to have proved the giving of the required confirmation, it is extremely doubtful whether plaintiff has proved the existence of the transaction which defendant denies in toto. To establish the existence of the alleged sale, plaintiff relies primarily upon its check to defendant dated July 19, 1968, in the amount of $2,374.60 carrying the Christopher custodian account number and payable to Norbert G. Mudd, custodian for Christopher K. Mudd, and upon the monthly statements upon this custodian account suit by plaintiff to defendant thereafter.

In the first place, the evidence is that almost without exception all of defendant's stock in all of his accounts was retained by plaintiff and never delivered to defendant and his universal practice in dealing with plaintiff was to direct plaintiff by telephone to buy and dispose of stock all actually in the possession of plaintiff. There is no evidence that defendant had ever before deviated from this procedure and ordered plaintiff to sell stock not at the time in plaintiff's possession. Again, according to the witness John Bolling Lewis, Jr., the way in which this transaction is alleged to have been handled is contrary to the universally approved rule in the securities industry that stock being sold *must* be in hand before the check is issued.

Plaintiff urges that defendant is bound by the notation on the check that the check represented proceeds generated by activity in the Christopher K. Mudd custodian account. Such notations, however, are not conclusive as to the acceptor of the check. *Kasco Mills* v. *Ferebee*, 197 Va. 589 (1956); *Atkins* v. *Boatwright*, 204 Va. 450 (1963).

Defendant testifies that he paid no attention to the account designation since plaintiff was constantly buying and selling securities on his behalf in all of the accounts around the time in question.

Perhaps the evidence which casts the strongest doubt upon the existence of the alleged negotiation is the fact that no demand for delivery of the stock or of its value was made on defendant until over two years after the alleged default on the part of the defendant. This would, indeed, be most unusual. Plaintiff insists that the monthly statements furnished defendant showing a debit of 50 shares of Ingersoll-Rand against the Christopher Mudd custodian account constituted monthly demands upon defendant. These entries could hardly be so considered. Defendant was, it is true, charged with notice of these entries but he testifies that upon receipt of the first statement, he called and questioned plaintiff's office regarding the nature of the entry and was told to disregard it as it was a mistake. O. Bennett Lewis, Jr., the member of plaintiff's organization with whom defendant dealt during the period in question, did not deny that he had made this statement to defendant, although he said that due to the intervening period of time, he could not remember having made it. He did, however, testify that during this particular period of time, due to a large turnover of personnel, numerous errors were made in the handling of plaintiff's records.

### Conclusion

Due to the time which has elapsed (over five years) since the alleged sale, it is extremely difficult for the participating parties to depend upon memory to supply the details necessary to either establish or refute the transaction in question. Unfortunately, the records of both plaintiff and defendant are in such shape that neither can supply the material necessary to either satisfactorily establish or refute the claim. The one essential piece of evidence which would have satisfactorily, if not conclusively, established plaintiff's claim would have been the confirmation memo required to have been furnished defendant. Such, if furnished defendant, would have required him to furnish written objection thereto within ten days

or be bound by the terms of the sale. Plaintiff having failed to prove that such confirmation was given defendant, judgment will be for defendant.